IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NIKKEYMA HUNT<br>9991 Penn Ave.<br>Akron, Ohio 44311 | ) ) ) ) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | ) ) | |
| v. | ) ) | **COMPLAINT FOR DAMAGES**<br>**AND REINSTATEMENT** |
| METRO REGIONAL TRANSIT<br>AUTHORITY<br>416 Kenmore Blvd.<br>Akron, Ohio 44301 | ) ) ) ) ) ) | **JURY DEMAND ENDORSED**<br>**HEREIN** |
| Defendant. | ) | |

Plaintiff, Nikkeyma Hunt, by and through undersigned counsel, as her Complaint against the Defendant, states and avers the following:

**PARTIES AND VENUE**

1. Hunt is a resident of the city of Akron, County of Summit, State of Ohio.

2. Metro Regional Transit is a public transit agency with its principal place of business located at 416 Kenmore Blvd. Akron, Ohio.

**JURISDICTION & VENUE**

3. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Hunt is alleging federal law claims under the Americans with Disabilities Act ("ADA") 42 U.S.C. 126 § 12101 *et seq.*, and the Family Medical Leave Act ("FMLA"), 29 U.S.C § 2601, *et seq*.

4. All material events alleged in this Complaint occurred in the county of Summit.

5. This Court has supplemental jurisdiction over Hunt's state law claims pursuant to 28 U.S.C. § 1367, as Hunt's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

7. Within 300 days of the conduct alleged below, Hunt filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2019-01760 against Metro operating at 416 Kenmore Blvd. Akron, Ohio.

8. On or about December 13, 2019, the EEOC issued and mailed a Notice of Right to Sue letter to Hunt regarding the Charges of Discrimination brought by Hunt against Metro in EEOC Agency Charge No. 532-2019-01760.

9. Hunt received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1) - which has been attached hereto as Plaintiff's Exhibit A.

10. Hunt has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

11. Hunt has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

**FACTS**

12. Hunt is a former employee of Metro.

13. Metro employed Hunt as a Bus Operator.

14. Hunt began working for Metro on or about August 21, 2017.

15. At all times relevant herein, Metro employed more than 50 employees in a 75-mile radius.

16. During the course of her employment, Hunt worked for Metro over one year.

17. While Metro employed her, Hunt was eligible for FMLA leave.

18. Hunt suffers from endometriosis.

19. The symptoms of endometriosis substantially impaired one or more of Hunt's major life functions, such as working.

20. As a result of suffering from endometriosis, Hunt is and was considered disabled within the meaning of the ADA 42 U.S.C. 126 § 12101 *et seq*.

21. In the alternative, Metro perceived Hunt as being disabled.

22. In the alternative, the Metro perceived that Hunt's medical condition constituted a physical impairment.

23. Despite this actual or perceived disabling condition, Hunt was still able to perform the essential functions of her job with or without reasonable accommodation(s).

24. In or around July 2018, Hunt requested intermittent FMLA leave for her endometriosis. ("First FMLA Request")

25. During her First FMLA Request, Hunt disclosed her endometriosis to Metro.

26. In or around July 2018, Metro denied Hunt's First FMLA Request.

27. On August 7, 2018, Hunt grazed an overhead awning while operating a Metro bus. ("Awning Graze.")

28. No one was injured during the Awning Graze.

29. The damage that occurred from the Awning Graze was nominal.

30. Following the Awning Graze, Metro suspended Hunt for ten days. ("Suspension")

31. Following the Awning Graze, Metro issued Hunt 21 progressive discipline points. ("Discipline Points")

32. Metro did not issue discipline similar to the Suspension to non-disabled employees who had accidents similar to the Awning Graze.

33. Alternatively, Metro did not issue discipline similar to the Suspension to individuals it did no perceive to be disabled to employees who had accidents similar to the Awning Graze

34. Metro did not issue discipline similar to the Suspension to employees who had not requested FMLA, who had accidents similar to the Awning Graze.

35. Metro issued the Suspension because Hunt is disabled.

36. Alternatively, Metro issued the Suspension because it perceived Hunt to be disabled.

37. Metro issued the Suspension because Hunt requested FMLA.

38. Metro did not issue discipline similar to the Discipline Points to non-disabled employees who had accidents similar to the Awning Graze.

39. Alternatively, Metro did not issue discipline similar to the Discipline Points to individuals it did not perceive to be disabled to employees who had accidents similar to the Awning Graze

40. Metro did not issue discipline similar to the Discipline Points to employees who had not requested FMLA, who had accidents similar to the Awning Graze.

41. Metro issued the Discipline Points because Hunt is disabled.

42. Alternatively, Metro issued the Discipline Points because it perceived Hunt to be disabled.

43. Metro issued the Discipline Points because Hunt requested FMLA.

44. Hunt returned from her suspension on or about September 1, 2018.

45. On or about September 5, 2018, Metro issued Hunt an additional four-day suspension. ("Additional Suspension")

46. Metro claims to have issued the Additional Suspension because Hunt had amassed 21 progressive discipline points during the Awning Graze.

47. Metro did not issue discipline similar to the Additional Suspension to employees who did not request FMLA.

48. Metro did not issue discipline similar to the Additional Suspension to non-disabled employees.

49. Alternatively, Metro did not issue discipline similar to the Additional Suspension to individuals it did not perceive to be disabled.

50. On or around October 1, 2018, Hunt suffered a heart attack.

51. On or around October 1, 2018, Hunt was diagnosed with coronary artery disease and myalgias. ("Heart Condition")

52. Hunt's Heart Condition substantially impairs one or more of Hunt's major life activities, such as working.

53. Hunt's Heart Condition constitutes a disability.

54. Hunt utilized FMLA leave following her October 1, 2018, heart attack.

55. Hunt utilized FMLA leave from October 1, 2018, until December 7, 2018.

56. On December 7, 2018, Hunt returned to work.

57. On December 7, 2018, Hunt resumed her training for a Line Service Position.

58. On or around December 7, 2018, Metro issued Hunt two weeks of additional training for the line service position. ("Additional Training")

59. Metro did not issue additional training to non-disabled employees.

60. Alternatively, Metro did not issue additional training to individual it did not perceive to be disabled.

61. Metro did not issue additional training to employees who did not use FMLA.

62. Metro issued the Additional training because Hunt is disabled.

63. Alternatively, Metro issued the Additional training because it perceived Hunt to be disabled.

64. Metro issued the Additional Training because Hunt utilized FMLA.

65. On or December 7, 2018, Metro issued Hunt a letter stating that if Hunt called off work, she would be terminated. ("Termination Threat")

66. Metro did not issue letters similar to the Termination Threat to non-disabled employees.

67. Alternatively, Metro did not issue letters similar to the Termination Threat to individual it did not perceive to be disabled.

68. Metro did not issue letters similar to the Termination Threat to employees who did not use FMLA.

69. Metro issued the Termination Threat because Hunt is disabled.

70. Alternatively, Metro issued the Termination Threat because it perceived Hunt to be disabled.

71. Metro issued the Termination Threat because Hunt used FMLA.

72. Metro issued the Termination Threat to discourage Hunt from using FMLA.

73. Hunt completed her line operator training on or about December 20, 2018.

74. After Hunt completer her line operator training, Hunt was assigned a new bus route.

75. While learning her new bus route Hunt occasionally made wrong turns that did not significantly impact her route time or scheduled stops.

76. It is not uncommon for drivers to make mistakes while learning new routes.

77. On January 4, 2019, Hunt was driving her assigned bus route.

78. On January 4, 2019, Hunt contacted Metro's dispatcher. ("Call for Help")

79. During the Call for Help, Hunt disclosed to Metro's dispatcher that she was not feeling well.

80. It is standard procedure for a driver who becomes ill in the middle of their shift to inform a Metro dispatcher.

81. It is standard procedure for a driver who becomes ill in the middle of their shift to request a replacement driver so they may go home or seek treatment.

82. Hunt followed standard procedure during the Call for Help.

83. At the time of the Call for Help, Metro had knowledge and/or sufficient information that Hunt had an FMLA qualifying disability.

84. During the Call for Help, Metro's dispatcher told Hunt to "keep pushing."

85. During the Call for Help, Metro's dispatcher told Hunt to "keep rolling."

86. Following the Call for Help, Metro did not send a driver to relieve Hunt.

87. During the Call for Help, Hunt requested a replacement driver as an accommodation. ("Accommodation Request")

88. Hunt's Accommodation Request was reasonable.

89. Hunt's Accommodation Request did not cause an undue hardship on Metro.

90. Metro did not determine if Hunt's Accommodation Request would cause an undue hardship.

91. Metro has no contemporaneously created documents reflecting any effort to determine if Hunt's Accommodation Request would cause an undue hardship.

92. After the Accommodation Request, no one at Metro engaged in an interactive process to find a reasonable accommodation for Hunt.

93. Metro violated the ADA when no one at Metro engaged in an interactive process to find a reasonable accommodation for Hunt.

94. Metro violated R.C. 4112.01 *et seq*. when no one at Metro engaged in an interactive process to find a reasonable accommodation for Hunt.

95. Following the Accommodation Request, Hunt made errors on her route.

96. Hunt would not have made the errors on her route had Defendant accommodated her.

97. On or about January 7, 2019, Metro terminated Hunt.

98. Metro terminated Hunt because of her disability.

99. Alternatively, Metro terminated Hunt because of a perceived disability.

100. Metro terminated Hunt in retaliation for utilizing FMLA leave.

**COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF 42 U.S.C. 126 § 12101 *et seq.***

101. Hunt restates each and every prior paragraph of this Complaint as if it were fully restated herein.

102. Hunt suffers from endometriosis and the Heart Condition ("Medical Conditions").

103. Hunt's medical conditions substantially impair one or more major life functions such as working.

104. As a result of suffering from the Medical Conditions, Hunt is disabled.

105. In the alternative, Metro perceived Hunt as being disabled.

106. Hunt's conditions constituted a physical impairment.

107. Metro treated Hunt differently than other similarly situated employees based on her disabling condition.

108. Alternatively, Metro treated Hunt differently than other similarly-situated employees based on her perceived disabling condition.

109. On or about January 7, 2019, Defendant terminated Hunt's employment without just cause.

110. Defendant terminated Hunt's employment based on her disability.

111. Alternatively, Defendant terminated Hunt's employment based on her perceived disability.

112. Defendant violated 42 U.S.C. 126 § 12101 *et seq*. when it discharged Hunt based on her disability.

113. Alternatively, Defendant violated 42 U.S.C. 126 § 12101 *et seq*. when it discharged Hunt based on her perceived disability.

114. Metro violated 42 U.S.C. 126 § 12101 *et seq*. by discriminating against Hunt based on her disabling condition.

115. Hunt suffered emotional distress as a result of Defendants' conduct and is entitled emotional distress damages pursuant to 42 U.S.C. 126 § 12101 *et seq*.

116. As a direct and proximate result of Defendant's conduct, Hunt suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT II: FAILURE TO ACCOMMODATE UNDER THE AMERICANS WITH DISABILITY ACT

117. Hunt restates each and every prior paragraph of this Complaint as if it were fully restated herein.

118. Hunt informed Metro of her Medical Conditions.

119. Hunt requested accommodations from Metro.

120. Hunt's requested accommodations were reasonable.

121. There was an accommodation available that would have been effective and would not have posed an undue hardship to Metro.

122. Metro failed to engage in the interactive process of determining whether Hunt needed an accommodation.

123. Metro failed to provide an accommodation.

124. Metro violated The Americans with Disabilities Act (ADA) 42 U.S.C. 126 § 12101 *et seq*.

125. As a direct and proximate result of Metro's conduct, Hunt suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT III: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. 4112.01 *et. seq.*

126. Hunt restates each and every prior paragraph of this Complaint as if it were fully restated herein.

127. Hunt suffers from the Medical Conditions.

128. Hunt's medical conditions substantially impair one or more major life functions such as working.

129. As a result of suffering from the Medical Conditions, Hunt is disabled.

130. In the alternative, Metro perceived Hunt as being disabled.

131. Hunt's conditions constituted a physical impairment.

132. Metro treated Hunt differently than other similarly situated employees based on her disabling condition.

133. Alternatively, Metro treated Hunt differently than other similarly-situated employees based on her perceived disabling condition.

134. On or about January 7, 2019, Defendant terminated Hunt's employment without just cause.

135. Defendant terminated Hunt's employment based on her disability.

136. Alternatively, Defendant terminated Hunt's employment based on her perceived disability.

137. Defendant violated R.C. § 4112.01 *et seq.* when it discharged Hunt based on her disability.

138. Alternatively, Defendant violated R.C. § 4112.01 *et seq.* when it discharged Hunt based on her perceived disability.

139. Metro violated R.C. § 4112.01 *et seq.* by discriminating against Hunt based on her disabling condition.

140. Hunt suffered emotional distress as a result of Defendants' conduct and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

141. As a direct and proximate result of Defendant's conduct, Hunt suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT IV: FAILURE TO ACCOMODATE UNDER R.C. 4112.01 *et seq*.

142. Hunt restates each and every prior paragraph of this Complaint as if it were fully restated herein.

143. Hunt informed Metro of her Medical Conditions.

144. Hunt requested accommodations from Metro.

145. Hunt's requested accommodations were reasonable.

146. There was an accommodation available that would have been effective and would not have posed an undue hardship to Metro.

147. Metro failed to engage in the interactive process of determining whether Hunt needed an accommodation.

148. Metro failed to provide an accommodation.

149. Metro violated R.C. § 4112.01 *et seq*.

150. As a direct and proximate result of Metro's conduct, Hunt suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT V: RETALIATION IN VIOLATION OF THE FMLA

151. Hunt restates each and every prior paragraph of this Complaint as if it were fully restated herein.

152. During her employment, Hunt inquired about FMLA leave.

153. Metro retaliated against Hunt, by issuing a write up after Hunt inquired about FMLA leave.

154. During her employment, Hunt utilized FMLA leave.

155. After Hunt utilized her qualified FMLA leave, Metro retaliated against her.

156. Metro retaliated against Hunt by terminating her employment.

157. Metro willfully retaliated against Hunt in violation of U.S.C. § 2615(a).

158. As a direct and proximate result of Defendant's wrongful conduct, Hunt is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorneys' fees.

## **DEMAND FOR RELIEF**

WHEREFORE, Hunt demands from Defendant the following:

(a) Issue an order requiring Metro to restore Hunt to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against Defendant of compensatory and monetary damages to compensate Hunt for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys fees and non-taxable costs for Hunt claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ *Daniel S. Dubow*

Daniel S. Dubow (0095530)
Brian D. Spitz (0068816)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:   (216) 291-5744
Email:  daniel.dubow@spitzlawfirm.com
         brian.spitz@spitzlawfirm.com

*Attorneys For Plaintiff*

## JURY DEMAND

Plaintiff Nikkeyma Hunt demands a trial by jury by the maximum number of jurors permitted.

/s/ *Daniel S. Dubow*

Daniel S. Dubow (0095530)
Brian D. Spitz (0068816)